CANTLAY & TANZOLA, Inc. et al. v. PUBLIC
SERVICE COMMISSION et al.

No. 7599.   Decided June 19, 1951.   (233 P. 2d 344.)

See 60 C. J. S., Motor Vehicles, sec. 90. Motor transportation, public service commission as having jurisdiction over. 37 Am. Jur., Motor Transportation, sec. 25; 103 A. L. R. 268.

*Warwick C. Lamoreaux, David K. Watkiss,* Salt Lake City, for plaintiffs.

*Clinton D. Vernon,* Atty. Gen., *J. Lambert Gibson,* Deputy Atty. Gen., *Mark K. Boyle,* Asst. Atty. Gen., *J. Richard Bell,* Asst. Atty. Gen., *Skeen, Thurman & Worsley,* Salt Lake City, *L. C. Montgomery,* Heber, for defendants.

WOLFE, Chief Justice.

Certiorari to review and order of the Public Service Commission granting a contract motor carrier permit to applicant I. Sander, Inc. to haul petroleum products from Salt Lake City to Vernal, Utah. I. Sander, Inc., or its predecessor, I. Sander, has transported gasoline and fuel oils in bulk for Standard Oil Company between Salt Lake City and Roosevelt, Utah (152 miles) for approximately 20 years. Applicant transports the gasoline to Roosevelt in either its 5500 or 7000 gallon semi-trailer outfits and there unloads the gas into its bulk plant. It has a contract carrier permit for this and receives 1 85/100 cents per gallon. The bulk plant at Roosevelt serves all Standard stations in the Uintah Basin, but 35 to 40% of retail sales are made in Vernal. From Roosevelt to Vernal is 34 miles. Applicant distributes from its Roosevelt bulk plant to retail stations in Vernal by hauling the gas in its 1400 gallon tank wagon. It takes approximately 29 trips a month at an expense of $8.40 per trip to supply the Vernal stations. If allowed by the Public Service Commission to haul directly to Vernal with its large transports, applicant would construct another bulk plant in Vernal and distribute from there. For this Salt Lake City to Vernal haul, it would be paid 2 12/100 cents per gallon, an additional revenue of 27/100 of a cent per gallon. Applicant would still receive the same compensation under its distribution contract with Standard Oil

Co. and the expense of the tank wagon trips would be eliminated, resulting in a saving to applicant of approximately $243.60 per month. The traffic between Roosevelt and Vernal would be reduced to one trip by the transport for every four or five tank wagon loads. Thus the Commission found that the

"said direct transportation of bulk load shipments of petroleum products between Salt Lake City, Utah and Vernal, Utah would prove less expensive to applicant, as well as facilitate greater efficiency in its operations; that also, direct operations would prove less burdensome to the public highways of Utah in that the number of trips between Roosevelt and Vernal would be lessened."

The Commission further found that protestants, Cantlay and Tanzola, Inc., Lang Transportation Co., Collett Tank Lines and Clark Tank Lines are operating as common carriers of petroleum products between Salt Lake City and Vernal, Utah and have listed numerous pieces of equipment that are available for this operation. But none of said protestants have ever hauled petroleum products for Standard Oil Company between Salt Lake City and Roosevelt or Vernal and

"although protestants have introduced evidence showing that ample transportation facilities are available to Standard Oil Company, nevertheless the evidence shows that rather than use the services of any of the protestants herein, said Standard Oil Company prefers and will in the future use the presently limited but authorized service of the applicant."

The protestants petition this court for a writ of review contending that the Commission erroneously granted the permit because our statute, Section 76-5-21, U. C. A. 1943, as amended by Chapter 105 of the Laws of Utah 1945, page 209, was not complied with. The statute (with numerical sub-divisions added) provides in part:

"If, from all the testimony offered at said hearing, the commission shall determine

"[1] that the highways over which the applicant desires to operate are not unduly burdened;

"[2] that the granting of the application will not unduly interfere with the traveling public;

"[3] and that the granting of the application will not be detrimental to the best interests of the people of the state of Utah and/or to the localities to be served;

"[4] and if the existing transportation facilities do not provide adequate or reasonable service, the commission shall grant such permit."

The fourth provision was added by the 1945 amendment. The findings of the Commission only state that the first three statutory provisions were complied with. The record is plain that the existing transportation facilities for the hauling of petroleum products from Salt Lake to Vernal are adequate and reasonable. Therefore protestants charge that the Commission did not regularly pursue its authority in issuing the permit.

The Commission followed the dictates of good common sense and granted the permit in order to eliminate the wasteful tank wagon trips between Roosevelt and Vernal, thereby reducing traffic on that portion of the highway, besides allowing applicant to conduct its business in a more efficient manner. What protestants have overlooked is the fact that the applicant's service in transporting to Roosevelt and distributing from there to Vernal has been and currently is part of the existing transportation facilities to Vernal. By its combined procedure of operations applicant has served this shipper for several years. The existing facilities are adequate because I. Sander Inc. has been furnishing a portion of such trucking service.

The fourth provision states affirmatively that the Commission shall grant a permit when the existing facilities are not adequate. It does not, however, mandatorily require the Commission to deny a permit in every instance unless the four provisions are found in favor of the applicant. The protestants do not charge

that the applicant's activities in distributing from Roosevelt to Vernal have been unlawful, but simply oppose the consolidation of the transport, and distribution hauls. Obviously the fourth provision of the statute here involved is not applicable in such a situation. This fourth provision was first enacted in substance in Article 1, Section 13 of Chapter 53 of the 1933 session laws. It was deleted from the 1935 revision, Chap. 65, then re-adopted in 1945, Chap. 105, 76-5-21, U. C. A. 1945. Its purpose is to regulate competition, so that each community will have adequate transportation facilities, and yet protect the shippers and public from the baleful results of excessive competition. Granting a permit to the applicant in this case does not increase competition, nor does it decrease protestants' volume of business in any way. The Commission found that Standard Oil Company prefers to deal with I. Sander, Inc. because the latter owns its own bulk plant from which it distributes and also is a lessor of three service stations in Vernal which buy and sell Standard Oil products. Thus the Commission's findings states:

"that the only effect of a denial of applicant's application would be to compel it to continue its present combined transportation and distribution arrangement although same would be less remunerative to applicant, as well as less efficient, and more burdensome to the public highways; that all of such restrictions of applicant's permit compelling applicant to operate less efficiently and at greater expenses as well as placing greater burden on public highways obviously are not in the public interest."

Protestants contend that the Commission's denial of a similar application for a permit filed by I. Sander as an individual in July of 1948, is res adjudicata and binding on the Commission in the present proceeding. This court recently held that prior decisions of this Commission are not necessarily res adjudicata as to a subsequent application, *Mulcahy* v. *Public Service Commission*, 101 Utah 245, 117 P. 2d 298. The doctrine of res adjudicata applies only to judicial decisions and a hearing

before this Commission does not conclude such rights of the parties that it is deemed to be exercising a judicial function as that term is construed in reference to the courts. Applicant complied with Section 21.7 of the rules of practice and procedure of the Public Service Commission which prohibits refiling within one year, an application concerning subject matter ruled upon in any proceeding.

In this case, where consolidation of the applicant's transportation and distribution arrangement would substantially reduce the burden on the highway, eliminate unnecessary wasteful practices in applicant's business, and would not decrease protestants' revenues or take away any of its business, it was proper for the Commission to grant the permit.

The order is affirmed. Costs awarded to applicant.

WADE, LATIMER and McDONOUGH, JJ., concur.

CROCKETT, Justice (concurring).

I concur and add this comment: I think Subsection (4) referred to in the main opinion concerning adequate "existing transportation facilities" means public carriers. The prior haul from Roosevelt to Vernal by Sander was not as a contract carrier under permit. No question was raised and no consideration is given to the legal status of the prior haul.